CASES DETERMINED

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE

## INDIAN TERRITORY.

---

### FOX vs TYLER.

Opinion delivered October 26, 1899.

*1.* *Written Instruments—Cannot be Contradicted by Parol Evidence.*

A written instrument, unambiguous in its terms, cannot be varied contradicted, or modified by parol evidence, of anything that occurred at or prior to the time when such written contract was executed.

*2.* *Ambiguous Written Instrument—Parol Evidence to Explain.*

When a written contract is ambiguous in its terms, parol evidence is admissible to explain and give force to it.

*3.* *Promissory Notes—Escrow—Delivery—Endorser Bound.*

A debtor delivered certain notes, drawn in favor of certain of his creditors, to a representative of one of the creditors with instructions to deliver the said notes when debtor's creditors, as shown by a list furnished such representatives, would agree to give debtor certain extensions. *Held,* It was not necessary to secure extensions from all of debtors creditors in order to

(2)

bind the endorsers on such notes, but only of those shown by the list furnished.

*4.  Promissory Notes—Liability of Maker—Estoppel.*

One who executes notes for the purpose of obtaining an extension and having returned to him property which has been transfered under a deed of assignment, is estopped from denying liability to pay such notes.

*5.  Pleading—Answer—When Reply Required.*

Unless the answer of defendant sets up a counterclaim or set-off, plaintiff is not required to file any reply to the answer.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Tyler & Simpson against W. R. Fox and others. Judgment for plaintiffs. Defendants appeal. Affirmed.

This suit was originally brought in the United States Commissioner's court at Purcell, in the Southern District of the Indian Territory, and was appealed to the United States Court for the Southern District of the Indian Territory, sitting at Purcell, where it was tried as anew. The plaintiffs below, Tyler & Simpson, were engaged in the wholesale grocery business at Gainesville, Tex., and are citizens of the United States. The defendants below, W. R. Fox and F. M. Fox, are members of the Chickasaw Nation by intermarriage, and the defendant J. E. Colbert is a Chickasaw Indian by blood. Suit was brought on August 26, 1896, upon a promissory note for the sum of $52.33, with interest at 6 per cent. per annum until paid. Plaintiffs allege that said note was executed and delivered, but no part of it has been paid. The answer of defendants is to the effect that W. R. Fox

was indebted to the plaintiffs and other mercantile firms mentioned in the answer, and that said parties entered into a written agreement which is as follows: "It is hereby agreed by and between Trounstine Bros. & Co., Tennant-Stribling Shoe Co., the Johnson & Larimer Dry Goods Co., Southern Mfg. Co., and Tyler & Simpson, of the first part, and F. M. Fox and W. R. Fox, of the second part, that notes signed by parties of the second part, and payable to parties of the first part, of this date, are not to be considered as valid notes unless all of the creditors of W. R. Fox agree to grant said W. R. Fox an extension of four, eight, and twelve months in settlement of his indebtedness to them. When all creditors have so agreed, then the notes aforesaid are to be still further indorsed by J. E. Colbert. Pending the settlement said notes are to be deposited with A. D. Hawk, cashier of the Chickasaw National Bank." There was also signed by the aforesaid parties and other creditors on August 25, 1896, an agreement to the effect that the said creditors grant W. R. Fox an extension of 4, 8, and 12 months' time in which to settle his indebtedness to them, taking his notes payable in 4, 8, and 12 months, said notes bearing interest at the rate of 6 per cent. per annum from date, and indorsed by F. M. Fox and J. E. Colbert. There were 11 firms who were creditors of W. R. Fox, who signed this last-mentioned agreement. This agreement is signed by all the parties mentioned therein, except J. E. Colbert. It is further alleged that, in accordance with said agreement, W. R. Fox signed the note sued upon, and also other notes, payable to various other creditors, and that F. M. Fox signed the same with him, and delivered them, with the said agreement, to the said Hawk. It is further alleged in the answer of defendants that, three or four days after said notes were delivered to said Hawk, he informed the defendants that the creditors of W. R. Fox had agreed to the extension of time as aforesaid, whereupon the said defendant

J. E. Colbert indorsed all of the said notes. It is further alleged that at that time they had perfect confidence that said Hawk would carry out the terms of said agreements and instructions given him, and not deliver the notes to the various parties until the conditions of said agreements were fully complied with; and they further allege that the representations made to the defendants, that all of the creditors of said W. R. Fox had consented to the extension of time for the payment of their debts, were false, and that the same were made by Hawk for the sole purpose of inducing Colbert to indorse said notes. The defendants below further allege, in their answer that, as soon as Colbert's indorsement was obtained, the said Hawk wrongfully and fraudulently, and without the consent or knowledge of defendants, delivered the said notes to said creditors, knowing at the time that all the creditors of said W. R. Fox had not agreed to give him the extension of 4, 8, and 12 months in which to pay off and discharge his indebtedness to them; and they further allege that at that time there were creditors who had not agreed to the extension of time, and that all of these facts were known to the said Hawk. The defendants further allege in their answer that F. M. Fox and J. E. Colbert signed the notes as sureties only, and did not otherwise owe the plaintiffs anything. The plaintiffs did not file a reply to this answer, but proceeded to the trial of the case before a jury, which returned into open court the following verdict: "We, the jury, find for the plaintiffs, and against the defendants W. R. Fox and F. M. Fox, and assess their damages at the sum of $52.33, at 6 per cent. interest from August 25, 1896, and further find that defendant J. E. Colbert is not liable, and find for him, the said defendant." After the filing of said verdict the court entered judgment thereon in favor of the plaintiffs, Tyler & Simpson, and against the defendants, W. R. Fox and F. M. Fox, for the sum of $56.68 — being the amount of principal and interest of the note sued

on—and for costs. Motion for new trial was duly filed and overruled, and now the defendants have brought the case on appeal to the United States Court of Appeals for the Indian Territory. The bill of exceptions contains all of the evidence taken in the United States Court in the case.

*Hocker & Wood* and *Davidson & Carter*, for appellants.

*J. F. Sharp*, for appellees.

SPRINGER, C. J.  The appellants assign 35 specifications of error  It is not necessary for this court to consider all of the assignments of error contained in appellants' brief. Two or three questions are raised, the disposition of which will be decisive of the whole case:

First, to what extent may oral evidence be admitted to modify and interpret documentary evidence? The general rule upon this subject is "that a written contract, unambiguous in its terms, cannot be varied, contradicted, or modifide by parol evidence of anything that occurred at or prior to the time when such written contract was executed." 11 Am. & Eng. Enc. Law (2d Ed.) p. 548.  To this general rule there are certain exceptions which are universally recognized:  First, fraud, intimidation, want of due execution, want or failure of consideration, or mistake in fact or law, or any other matter which, if proved, would produce any effect upon the validity of any document, or of any part of it, or which would entitle any person to any judgment, decree, or order relating thereto; second, the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final settlement of the whole of the transaction between them; third; the existence of any separate oral agreement

*Parol Evidence.*

constituting a condition precedent to the attaching of any obligation under any such contract, grant, or disposition of property; fourth, the existence of any distinct subsequent oral agreement to rescind or modify any such contract, grant, or disposition of property, provided that such agreement is not invalid under the statute of frauds or otherwise; fifth, any usage or custom by which incidents not expressly mentioned in any contract are annexed to contracts of that description, unless the annexing of such incidents to such contract would be repugnant to, or inconsistent with, the express terms of the contract. Oral evidence of a transaction is not excluded by the fact that a documentary memorandum of it was made, if such memorandum was not intended to have legal effect as a contract, or other disposition of property. Oral evidence of the existence of a legal relation is not excluded by the fact that it has been created by the document, when the fact to be proved is the relationship itself, and not the terms on which it was established or carried on. See Steph. Dig. Ev. pp. 161-164, and cases there cited. Applying the general principles stated in these authorities, and the exceptions which have been noted, to the case at bar, it will be seen that the oral evidence admitted by the court in explanation of the written contract mentioned in the statement of facts in this case was not error on the part of the court. The agreement mentioned in the statement aforesaid was not all that was agreed to by the parties at the time. The other agreements and understandings were not inconsistent with the written statement signed by the parties, and the right to establish such separate oral agreements made the oral evidence admissible, under the exceptions above stated. There is evidence in the record tending to show that a list of the mercantile creditors of W. R. Fox was furnished to W. F. Miller, a representative of one of the creditors who signed the agreements aforesaid, who previous to said time knew nothing of the persons who comprised W.

R. Fox's creditors. The list furnished contained the names of 13 creditors, including the 5 creditors signing the first agreement, and was supposed by the creditors present, as is alleged, to include all of Fox's creditors, except the bank and some small home creditors. There is also evidence tending to establish the fact that W. F. Miller should call upon certain creditors mentioned, and get their signatures, and should write to other creditors residing in Illinois and North Carolina, and that W. R. and F. M. Fox were to look after the bank and other possible home creditors. The ground upon which the appellants in this court contend that they are not liable to pay the note sued upon is that the note sued upon and the other notes mentioned herein were delivered to the payees thereof at a time when all of the creditors of W. R. Fox had not agreed to give him the extension of 4, 8, and 12 months in which to pay off and discharge his indebtedness to them. The question involving this point was submitted by the court to the jury in the third instruction of the court's charge to the jury, which is as follows: "You are instructed that if a list of creditors were presented to the plaintiffs by the defendants at the time of the making of the written contract introduced by the defendants, and that said list did not embrace all of the creditors of the defendant W. R. Fox, but that the plaintiffs understood that the list presented by the defendants were the creditors of W. R. Fox, which they required the plaintiffs to procure to be signed, and you should believe from the evidence that the plaintiffs did procure the creditors so designated by defendants to sign said contract, and you should further believe from the evidence that the plaintiffs and defendants agreed that the creditors whose names were procured to be signed to said contract did sign the same, then and in that event you are instructed that the signing of said contract was a compliance with the terms thereof, and your verdict should be for the plaintiffs " The jury found the facts for the plaintiffs,

namely, that the plaintiffs did procure the creditors, who were designated by the defendants, to sign the contract extending the time of payment of said W. R. Fox's indebtedness. The fact which transpired under the evidence, that there were certain other creditors whose names were not furnished to the plaintiffs, and whose signatures were not secured, was immaterial, if the jury should find from the evidence that the creditors whose names were procured were those furnished the plaintiffs by W. R. Fox. The court properly held that the creditors were only required, under their agreements, to procure the consent of the creditors, the list of whom was furnished them, and that after procuring the consent of such creditors they were entitled to the delivery of the notes which had been placed in escrow.

The second question involved in the assignment of errors in this case was submitted to the jury in the fourth instruction of the court, which is as follows: "You are instructed that if you believe from the evidence in this case that the creditors of W. R. Fox, for whose benefit the deed of assignment was made by W. R. Fox to F. M. Fox, on the 23d day of August, A. D. 1896, released all their rights under said assignment to the said W. R. Fox, and agreed that the property transferred by said deed of assignment should be returned to the said W. R. Fox, and that the consideration for such agreement was that the said defendants should execute the note sued on in this case, and if, in pursuance of said agreement, the said property was returned to the said W. R. Fox, and was received by him and appropriated by him as his own property; and provided you further believe from the evidence that said W. R. Fox obtained from substantially all his creditors the extension of time for the payment of their debts stipulated for in the contract read to you in evidence by the defendants,—then the plaintiffs will be entitled to recover, notwithstanding an insignificant number of the creditors of said Fox never formally agreed to the

said extension of time." The appellants assign as error the giving of this instruction by the court, for the reasons stated in appellants' brief. The objections to this instruction were not well taken, and need not be stated in this opinion. There was sufficient evidence in the record upon which to base the instruction, and the question submitted was properly one for consideration and determination by the jury. The principle of equitable estoppel announced by the court in this instruction is well established by the authorities. It was not denied that defendant W. R. Fox, in pursuance of the agreements and undertakings of appellees, did procure an extension of the time of payment of his commercial paper, and did procure the return to him of his stock of goods, and thereby received the benefit of the transaction. He was therefore estopped from denying his liability to pay the notes which were executed by him for the purpose of securing this extension. The doctrine of equitable estoppels has become too firmly established to question at this time the wisdom of the change which released it from the exclusive jurisdiction of former times, and enlarged its operation to the whole field of jurisprudence. Kirk vs Hamilton, 102 U. S. 76 (opinion of the supreme court of the United States, by Mr. Justice Harlan.)

*Estoppel.*

There is but one other question involved in the case which requires consideration by this court. In the first specification of error it is contended by appellants that it was error to permit witness F. M. Fox to be examined as to the execution and delivery of the written agreement, for the reason that its execution and delivery had not been denied by the plaintiffs; they having filed no reply to the affirmative matters set up in the defendants' answer. Section 5043, Mansf. Dig. (section 3248, Ind. T. Ann St. 1899), provides as follows: "There shall be no reply except upon the allegation of a counterclaim or set off in the answer." This section is found in the chapter on Pleading and Practice, and was the

Pleading.
Reply.
rule of pleading as to replies in this jurisdiction. The answer of the defendants did not set up a counterclaim or set-off. The plaintiffs therefore were not required to file any reply thereto, but on the trial of the case it was competent to introduce any evidence which would tend to traverse the evidence tending to establish the new matter alleged in the answer.

It is unnecessary to consider the various assignments of error in this case in detail. The determination of the questions above considered is decisive of the real points involved in the case. There appearing to be no error in the case, the judgment of the court below is therefore affirmed.

CLAYTON and THOMAS, JJ., concur.